PATRICIA LA PUMA, Plaintiff-Appellee, v. THE VILLAGE OF LONG GROVE, Defendant and Third-Party Plaintiff-Appellant (Louis La Puma, Third-Party Defendant-Appellee).

Second District No. 2—92—0074

Opinion filed November 4, 1992.—Rehearing denied December 11, 1992.

Sarah Hansen Sotos and Janella L. Barbrow, both of Knight, Hoppe, Fanning & Knight, Ltd., of Des Plaines (Patrick J. Fanning, of counsel), for appellant.

David A. Decker, of Decker & Linn, Ltd., of Waukegan (Thomas D. Campe, Jr., of counsel), for appellees.

JUSTICE GEIGER delivered the opinion of the court:

The defendant and third-party plaintiff, the Village of Long Grove (the village), appeals from the trial court's judgment finding that it was liable in this tort case for injuries to the plaintiff wife, Patricia La Puma. The judgment also found the third-party defendant-appellee husband, Louis La Puma, liable. The village appeals, arguing that it should have been granted judgment notwithstanding the verdict. We reverse.

This case arises from an automobile accident that occurred at 10 p.m. on April 29, 1989. The wife was asleep as a passenger in the au-

tomobile driven by her husband. The automobile struck and catapulted over a berm at the end of Arlington Heights Road in Long Grove. The vehicle apparently had been traveling at least 50 miles per hour before hitting the berm.

One block before the berm there is a yellow, diamond-shaped "No Outlet" sign; a yellow, diamond-shaped "Dead End" sign; and a 25-mile-per-hour speed limit sign. The husband testified that he had not seen those signs. Two hours after the accident, the husband showed a .12 blood-alcohol content; 1½ hours after the accident, the wife showed a .16 blood-alcohol content. The husband pleaded guilty to both driving under the influence of alcohol and failing to avoid an accident.

The wife brought suit against the village, charging it with negligence in allowing the berm to exist without a barricade or signs, failing to replace the barricade and signs that existed previously; failing to replace the signs warning that the road was closed; failing to remove the berm after the village should have known it posed a danger; and failing to maintain and operate a reasonably adequate inspection system regarding the missing barricade and signs. The village pleaded that the wife was also guilty of negligence; it also brought a third-party contribution claim against the husband for his negligence.

Following trial, the jury returned a verdict finding that the wife had suffered $200,000 in damages. It found that 20% of the negligence was attributable solely to the wife. It apportioned the remaining 80% liability between the husband and the village, finding that the husband was 85% liable and that the village was 15% liable.

The trial court entered judgment on the jury verdict. It found the village jointly and severally liable for 80% of the wife's medical expense damages, but entitled to 85% contribution from the husband. That translated to an $11,145.17 net, sole liability for the village. The court also found that the village was severally liable for $12,854.83 for the wife's nonmedical damages. The village moved for judgment notwithstanding the verdict, and the court denied the motion. This appeal followed.

The village's first argument on appeal is that the trial court erroneously denied it a judgment notwithstanding the verdict. According to the village, it owed no duty to the wife. The village argues that its duty of care in the maintenance of its property, as covered by the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (see Ill. Rev. Stat. 1991, ch. 85, par. 1—101 *et seq.*), is restricted to intended or permitted users exercising ordinary care and that the wife was not, in this case, such a user.

The wife argues that her husband's driving speed and his intoxication were factors for the jury to consider to determine whether he was negligent, but that they do not lead to a conclusion that he and his passenger were "misusing" the road and driving "illegally." The wife's liability claim relies on the village's obligation under section 3—102(a) of the Tort Immunity Act (Ill. Rev. Stat. 1991, ch. 85, par. 3—102(a)).

■ On the subject of municipal liability to provide safe roadways, section 3—102(a) provides that generally "a local public entity has the duty to exercise ordinary. care to maintain its property in a reasonably safe condition *for the use in the exercise of ordinary care* of people whom the entity *intended and permitted* to use the property in a manner \*\*\* reasonably foreseeable that it would be used." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 85, par. 3—102(a).) This provision has been discussed in a number of other cases relevant to our considerations here. The village relies primarily upon two cases: *Curtis v. County of Cook* (1983), 98 Ill. 2d 158, and *Thompson v. County of Cook* (1991), 222 Ill. App. 3d 459.

In *Curtis*, the plaintiff was seriously injured when she was a 16-year-old passenger in an automobile. The automobile in which she was riding went out of control and struck a sign post while it was engaged in a form of drag racing called "speed clocking." On appeal from the appellate court's remand for trial, the supreme court reversed. It found that the appellate court had erred in finding that the governmental defendant owed a statutory property-related duty to the plaintiffs. In reviewing the language of section 3—102(a), the court found that the legislature intended to extend a duty of care only to those persons by whom the local government intended the property to be used. (*Curtis*, 98 Ill. 2d at 164-65.) According to the *Curtis* court's analysis, as a passenger in a "speed-clocking" automobile, the defendant could not be said to fall within the class of motorists by whom the defendant's highways were intended to be used. 98 Ill. 2d at 165.

Relying largely on the *Curtis* analysis, the *Thompson* court considered a factual situation directly analogous to the one now at bar. There, the widow, child, and personal representative of the decedent sought damages for the decedent's death under section 3—102(a) of the Tort Immunity Act. The case arose from a one-vehicle automobile accident in Cook County. The evidence showed that the decedent and his driver had both consumed alcoholic beverages during the afternoon before the accident. A blood test performed on the decedent, when he was brought to the hospital with injuries, showed a blood-alcohol content of .207. The driver had gone off a curving road and the

decedent died of resulting injuries 133 days after the accident. Shortly before the accident, a police officer observed the automobile driving near the accident site. The officer had used radar to clock the vehicle at 69 miles per hour in a 55-mile-per-hour zone. (*Thompson*, 222 Ill. App. 3d at 460.) He also estimated the vehicle's speed at 80 to 85 miles per hour after it turned onto the curving road from which the accident occurred; the speed limit there was 35 miles per hour. 222 Ill. App. 3d at 461.

Following a jury trial, the trial court denied a directed verdict for the county. Based on the jury verdict, the court entered judgment against the county, reducing the amount of liability by the extent of the driver's negligence. It also denied the county's motion for judgment notwithstanding the verdict. 222 Ill. App. 3d at 463.

In reversing, the appellate court concluded, as the county had argued, that the county did not owe the decedent a duty. To reach that conclusion, the *Thompson* court relied primarily on *Curtis*. In one specifically applicable portion of its analysis, the court responded to the plaintiffs' argument that the driver's culpability could not be imputed to his passenger. It noted that the *Curtis* court had drawn no distinction between passengers and drivers in determining whether one was within the class of " '*motorists* by whom defendant's highways were intended to be used.' " (Emphasis in original.) 222 Ill. App. 3d at 466, quoting *Curtis*, 98 Ill. 2d at 165.

We find that the decision in *Thompson* is directly applicable to the case before us. There, as here, the underlying accident injured a passenger of an automobile being driven at an illegally excessive speed, by an intoxicated driver. In both cases, the injuries were caused when the automobile left the road. We find that this case, as *Thompson*, does not require close analysis of signage directly related to the accident. (See 222 Ill. App. 3d at 463.) Here, as there, the *Curtis* analysis leads to the conclusion that the government bore no duty, and it is controlling.

We find that the wife's presentation is fully unresponsive to the issues at hand. Her analysis of the issue begins, essentially, with the axiom that a highway is intended for use by automobiles. (See *Wojdyla v. City of Park Ridge* (1992), 148 Ill. 2d 417, 423.) From that beginning, the wife merely recounts certain facts of the case: namely, that she was a sleeping passenger in a car driven by her husband, that he was lost on an unfamiliar road while intending to go home, that he was driving on a dark road toward an unmarked berm that lacked a reflectorized barrier and warning sign, that warning signs previously had existed at the site, and that "at least nineteen" acci-

dents had occurred at the site during the last four years. She also notes that according to the husband's testimony, his reaction time at the time of the accident was reasonable and that he had not seen a sign reflecting a lowered speed limit at the site.

In *Wojdyla*, the plaintiff's decedent was struck by an automobile when he was a pedestrian crossing a highway in the defendant city. (148 Ill. 2d at 420.) In examining the city's duty to the pedestrian decedent, the *Wojdyla* court made no finding inconsistent with the *Curtis* and *Thompson* cases. It did not, for example, proceed from its acknowledgment that a highway is intended for use by automobiles to a suggestion that there is a governmental duty to all automobiles operating on a highway.

To the extent that we find *Wojdyla* persuasive on the issues at hand, we find that it disfavors the wife here. That case found yet another factual pattern under which a highway user was not within the group of intended and permitted users entitled to a duty by the government. See *Wojdyla*, 148 Ill. 2d at 427.

Albeit for different reasons than the ones used to exclude the *Wojdyla* decedent from the scope of governmental duty, in this case we reach the same conclusion as the one there: that there was no duty. In doing so, we find that the specific facts of the case noted by the wife go to the matter of negligence, not to the more basic question of whether there is a duty. Thus, they entirely miss the point before the court. Based on the evidence that at the time of the accident the husband was driving in an intoxicated condition and at a speed greatly in excess of the relevant legal limit, and with reliance on the analysis followed by the *Curtis* and *Thompson* courts, we conclude that here there was no duty. Thus, the village was entitled to judgment notwithstanding the verdict.

Based on the foregoing, we reverse the judgment of the circuit court of Lake County and remand the cause for proceedings necessary for the entry of a modified judgment order.

Reversed and remanded with instructions.

WOODWARD and DOYLE, JJ., concur.