WAYNE MASCHHOFF, Plaintiff-Appellee, v. NATIONAL SUPER MARKETS, INC., Defendant-Appellant.

Fifth District   No. 5—91—0155

Opinion filed June 25, 1992.

Ann E. Hamilton, of St. Louis, Missouri, for appellant.

Otto J. Faulbaum, of Waterloo, for appellee.

PRESIDING JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, National Super Markets, Inc., appeals from a judgment of the circuit court of St. Clair County for plaintiff, Wayne Maschhoff, in the amount of $62,310. The jury returned a verdict assessing plaintiff's damages at $93,000 and reduced the award by 33% for plaintiff's contributory negligence. In this cause, defendant raises two issues: (1) whether the trial court erred in failing to grant defendant's motion for directed verdict and/or judgment notwithstanding the verdict (j.n.o.v.), and (2) whether plaintiff proved with reasonable certainty that defendant's acts or omissions were the proximate cause of plaintiff's injuries. We affirm.

This case arises out of a slip and fall plaintiff experienced in defendant's Carbondale store while delivering milk. On September 14, 1985, plaintiff was employed as a dairy delivery driver for Howard Huge, an independent Pevely dairy distributor. On that date, plaintiff arrived at defendant's store in Carbondale between 7 and 8 a.m. Plaintiff cleared the loading dock so that he could unload his truck. Plaintiff then notified the dairy manager that he had arrived. It was the dairy manager's duty to count the items plaintiff delivered to make sure the store was getting what it ordered. Normally, plaintiff

delivered loads of four to six pallets of dairy products to this particular store. The pallets contained 16 to 20 stacks of crates, each five to six cases high. On this particular date, plaintiff used his pallet jack to take the pallets from the loading dock inside the store to just outside the dairy cooler. Plaintiff then had to wait for the dairy manager. When the dairy manager arrived, plaintiff started to put the milk in the cooler. In order to transfer the milk to the cooler, plaintiff used a "J" hook in his right hand to hook the bottom crate in a stack of milk and stabilize the stack by holding the top crate with his left hand. Plaintiff would then jerk the whole stack off the pallet and slide it across the store into the cooler. Plaintiff then backed away from the stack, pulling the crates toward him as he walked.

On September 14, 1985, plaintiff noticed a buildup on the floor prior to his placing the milk in the cooler. Plaintiff described the condition, stating, "It was dirty and had milk or water or grime, whatever you want to call it, on the floor." Plaintiff later described it as "dirt and slime" that was slippery and also referred to it as a "buildup." Plaintiff did not clean the floor nor did he ask any of defendant's employees to clean the floor. Plaintiff had taken four or five stacks of milk to the back of the cooler prior to his fall. Plaintiff was not sure why he fell, but for some reason his foot slipped out from under him. The dairy manager was five feet in front of plaintiff when he fell. Plaintiff fell on his elbow, then his buttocks hit the floor, and ultimately, plaintiff landed on his back. When plaintiff fell, the milk crates fell on top of him. The dairy manager helped plaintiff get up and assisted plaintiff in putting the milk containers back in the crates. None of the cartons broke during the fall. Both plaintiff and the dairy manager then went to the front of the store and reported to the store manager that plaintiff had fallen in the dairy cooler. After they notified the manager, they went back and cleaned up the floor. The floor was mopped clean. Plaintiff testified that after the floor was mopped it was no longer slippery, and he finished filling the cooler without further incident. Plaintiff sustained injuries as a result of his fall.

On cross-examination, plaintiff agreed with defendant's attorney that it was easier to pull the crates when the floor was damp. Plaintiff also agreed that the milk containers had a tendency to sweat if they were left outside a refrigerated area and some occasionally leaked. However, plaintiff expressly denied that he did anything to cause the slippery condition which existed on September 14, 1985.

The trial court overruled defendant's motions for directed verdict, and the jury returned a verdict in plaintiff's favor. The trial court refused to grant defendant's motion for *j.n.o.v.* Defendant appeals.

The first issue we must consider is whether the trial court erred in failing to grant defendant's motion for directed verdict and/or *j.n.o.v.* Defendant contends that it is not liable for plaintiff's injuries because the condition of the floor was known and obvious to plaintiff prior to his fall and plaintiff must be responsible for his own conduct. Defendant also argues that it is not liable to plaintiff because plaintiff's injuries were not foreseeable. Finally, defendant contends that plaintiff failed to make a submissible case of negligence against defendant since plaintiff failed to prove that defendant knew or should have known about the dangerous condition prior to plaintiff's fall. Plaintiff responds that the verdict is supported by the evidence and the law. Plaintiff argues that his knowledge that the floor was dirty and slippery prior to his putting the milk in the cooler did not relieve defendant of its duty to him. We agree with plaintiff.

To succeed on a claim of negligence a plaintiff must prove a duty, a breach of that duty, and an injury proximately resulting from the breach. (*Jones v. Chicago Transit Authority* (1990), 206 Ill. App. 3d 736, 565 N.E.2d 46; *Watkins v. Mt. Carmel Public Utility Co.* (1988), 165 Ill. App. 3d 493, 519 N.E.2d 10.) Whether defendant owes plaintiff a duty of care is a question of law for determination by the court. (*Deibert v. Bauer Brothers Construction Co.* (1990), 141 Ill. 2d 430, 437-38, 566 N.E.2d 239, 243.) Factors relevant in determining whether a legal duty exists are reasonable foreseeability of injury, likelihood of injury, magnitude of burden of guarding against it, and consequences of placing that burden upon defendant. *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 156, 554 N.E.2d 223, 226-27.

■ Generally, a possessor of land, such as defendant, owes its invitees a duty of reasonable care to maintain its premises in a reasonably safe condition. (Restatement (Second) of Torts §343, at 215-16 (1965); *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 145-46, 554 N.E.2d 223, 229.) Section 343A of the Restatement of Torts, which Illinois has adopted, provides that a possessor of land cannot be liable for an invitee's injury if the condition of the land which caused the injury was known or obvious to the invitee. (Restatement (Second) of Torts §343A(1), at 218 (1965).) "Known" means "not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves." (Restatement (Second) of Torts §343A, Comment *b*, at 219 (1965).) "Obvious" denotes that "both the condition and the risk are apparent to and would be recognized by a rea-

sonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment." (Restatement (Second) of Torts §343A, Comment *b*, at 219 (1965).) Comment *f* to the Reporter's Notes to section 343A explains further the duty of the possessor of land as set forth in section 343A:

> "*f.* There are *** cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.
>
> *Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk.* In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk. (See §§466 and 496D.) It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances." (Emphasis added.) (Restatement (Second) of Torts §343A, Comment *f*, at 220 (1965).)

The principles expressed in the Restatement are consistent with the general duty of reasonable care owed to invitees and licensees and, as such, are relevant to the resolution of whether an injury was reasonably foreseeable. *Ward v. K mart Corp.*, 136 Ill. 2d at 151, 554 N.E.2d at 232.

■■ We conclude that the injury here was reasonably foreseeable. First, we note that the dirty, slippery floor, the condition which caused the injury, was obvious, as indicated by plaintiff's own testimony. Plaintiff testified that he saw the buildup on the floor prior to his stacking the milk in the cooler. But despite this obviousness, we believe this is an instance where the possessor of land can be liable.

Defendant has argued that there was no evidence of distraction or forgetfulness on the part of plaintiff and that defendant is therefore not liable. However, an examination of the record shows that plaintiff did not state that he was not distracted, nor did he state that he was always mindful of the condition of the floor. Plaintiff testified as to the large amount of milk he delivered to defendant and how it required a certain stacking procedure in the cooler. Plaintiff could have forgotten the slippery condition of the floor after a series of "safe" trips across the floor. Moreover, plaintiff might have been distracted by talking to the dairy manager who was on duty and who was only five feet away when plaintiff slipped. We agree with the trial court that it was a question of fact for the jury to determine whether defendant breached its duty to plaintiff. The obviousness of the danger and plaintiff's own negligence affect whether and to what extent plaintiff is comparatively negligent, not the duty of the possessor of land. *Deibert v. Bauer Brothers Construction Co.*, 141 Ill. 2d at 442, 566 N.E.2d at 245; *Ward v. K mart Corp.*, 136 Ill. 2d at 143, 156-57, 554 N.E.2d at 228, 234; Restatement (Second) of Torts §343A, Comment *f*, at 220 (1965).

Defendant argues that the instant case is analogous to *Amaral v. Woodfield Ford Sales, Inc.* (1991), 220 Ill. App. 3d 357, 581 N.E.2d 19, which addressed the issue of duty of a possessor of land to a business invitee. The plaintiff in *Amaral* was an independent contractor who was injured in a slip and fall in a car dealership's service area while at the dealership to apply rustproofing. In his deposition, the plaintiff stated that he was aware of the potential danger caused by radiator fluid on the floor and knew that the radiator had just been flushed in the area. The plaintiff stated that at the time he fell he was looking down and walking carefully because the floor was wet. The *Amaral* court found these admissions indicated that the plaintiff was "not only aware of the potential danger, but that he had not been distracted from that awareness." (220 Ill. App. 3d at 364, 581 N.E.2d at 24.) The *Amaral* court held that the car dealership had no obligation to protect the independent contractor from the open and obvious danger of the radiator fluid. We find the instant case distinguishable. As previously discussed, the record supports the inference that plaintiff may have forgotten about the slippery condition of the floor. While plaintiff was never asked whether his attention was distracted or whether he forgot about the slippery condition of the floor, the jury could have reached the reasonable conclusion that after plaintiff had successfully slid between four and five stacks of crates to the back of the cooler without incident, he forgot about the slippery condition. In

*Amaral*, the plaintiff admitted being mindful of the potential hazard at all times when he fell. Moreover, radiator flushes occurred frequently in *Amaral* and were a hazard of the job. Requiring the floor to be washed and scrubbed after every radiator flush would place a great burden on the owner of the auto shop, whereas requiring a dairy cooler to be cleaned intermittently by the dairy department employees would not. *Amaral* is, therefore, distinguishable.

■ Once it is determined that defendant owes plaintiff a duty, the next question is whether the duty was breached. Whether defendant breached its duty is a question of fact for the jury. (*Deibert v. Bauer Brothers Construction Co.*, 141 Ill. 2d at 437-38, 566 N.E.2d at 244.) The general rule is that liability will be imposed where a business invitee is injured by slipping on a foreign substance on business premises if (1) the substance was placed there by the negligence of the proprietor, (2) if the proprietor's servant knew of its presence, or (3) if the substance was there a sufficient length of time so that in the exercise of ordinary care its presence should have been discovered. *Hayes v. Bailey* (1980), 80 Ill. App. 3d 1027, 1030, 400 N.E.2d 544, 546.

Here, it is reasonable to expect that defendant was aware via the dairy employees that the floor of the dairy cooler was in need of cleaning due to a slippery buildup that had been allowed to accumulate. The dairy manager was present when plaintiff was stacking the milk in the cooler. He should have seen the buildup and offered to have it cleaned prior to plaintiff working in the area. Moreover, plaintiff described the condition as a buildup, the connotation being that the condition was allowed to accumulate over a period of time. Had defendant required the floor of the dairy cooler to be cleaned on a regular basis, the slippery condition would not have existed.

■ Plaintiff did have a responsibility for his own safety and should be held to be as aware as defendant of the obvious danger of a slippery buildup on a floor. As discussed, however, a defendant's duty does not terminate if the defendant had reason to expect that the plaintiff would be distracted or forgetful of the obvious danger. Such is the case here. It was for the jury to determine whether defendant exercised reasonable care to protect plaintiff and what effect, if any, the obviousness of the danger and plaintiff's own negligence had on plaintiff's recovery. Here, the jury found plaintiff's actions to be a contributory factor to his injury and accordingly reduced plaintiff's award by 33%. We find the trial court was correct to submit this case to the jury and deny defendant's motions for directed verdict and *j.n.o.v.*

■ The other issue we are asked to consider is whether plaintiff failed to prove with reasonable certainty that defendant's acts or omissions were the proximate cause of plaintiff's injuries. Defendant argues that plaintiff failed to prove the "cause in fact" of his injuries because plaintiff offered no evidence at trial as to the nature of defendant's act or omission which allegedly caused plaintiff's injuries. Defendant argues that plaintiff failed to prove any act or omission by defendant produced plaintiff's injuries through a sequence of events unbroken by any intervening cause. Defendant contends that plaintiff's dragging four to five loads of milk into the cooler was an intervening cause and that we should find as a matter of law that plaintiff failed to prove defendant was the proximate cause of plaintiff's injuries. We disagree.

In *Kerns v. Engelke* (1977), 54 Ill. App. 3d 323, 369 N.E.2d 1284, *aff'd in part, rev'd in part* (1979), 76 Ill. 2d 154, 390 N.E.2d 859, the term "proximate cause" was explained:

" 'Proximate cause' is a term of art which encompasses the distinct concepts of cause in fact and legal cause. Determining whether the defendant's conduct was a cause of plaintiff's injury involves nothing more than an analysis of the facts. Once it is established that the defendant's conduct has in fact been a cause of the injury, however, there remains the question whether the defendant should be legally responsible for what he has caused. As otherwise stated, the question is whether the policy of the law will extend defendant's responsibility to the consequences which have in fact occurred." (54 Ill. App. 3d at 333, 369 N.E.2d at 1292.)

Cause in fact is ordinarily for the jury to determine, but where it is apparent from undisputed facts that only one conclusion can be drawn, the question then becomes one for the court to resolve as a matter of law. *Fisher v. Crippen* (1986), 144 Ill. App. 3d 239, 244, 493 N.E.2d 1204, 1208; *Sharpe v. Jackson Park Hospital* (1981), 99 Ill. App. 3d 874, 878, 425 N.E.2d 1244, 1247.

We have previously discussed the considerations expressed in sections 343 and 343A of the Restatement and how they relate to the facts of the present case. It is apparent that plaintiff may have forgotten the danger caused by the slippery buildup on the floor or may have been distracted from it. While defendant argues that plaintiff caused the slippery condition by moving "sweating" milk bottles over the floor or bringing leaking bottles into the cooler, there is no such evidence in the record. In fact, plaintiff expressly denied that he did anything to cause the slippery condition. There is no evidence that

plaintiff's actions constituted an intervening act. We cannot say conclusively that defendant did not breach its duty, nor can we say that defendant's breach was not a proximate cause of the injury. We cannot agree with defendant that plaintiff was 100% responsible for his injury. We find that the trial court correctly left these issues for the jury to determine.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

H. LEWIS and CHAPMAN, JJ., concur.